Next case is Thomas Smith v. Department of Homeland Security 2015-3065. Mr. Friedman. Thank you. May it please the court. This unfortunate matter had arisen as a result of a minor event caused by forces outside of the control of the petitioner, in this case Thomas Smith, and has resulted in his termination. He was a dedicated Federal Air Marshal with an otherwise unblemished and exemplary record of 10 years of service. The incident was described as an assault on one of Smith's team members when he was on a mission. It was a one and a half day mission where he and three other team members traveled from Philadelphia on a commercial international airline to Brussels. Are there facts here to which we have to defer? There was an investigation, he caused a witness to lie, he threatened him. Aren't these underlying facts supporting the lack of candor charge? The lack of candor charge was based upon a determination that Mr. Smith had intentionally provided misleading testimony relating to the time of the event in question. The fundamental issue is in a lack of candor charge, there is a difference between a false statement made under a good faith estimate and a false statement made with an intentional intent to deceive. There were credibility judgments here, we can't do anything about those. There was no credibility assessment made by the administrative judge in this case based on demeanor evidence. There is a significant issue as to whether the injured Federal Air Marshal, Mr. Messinger, was treated in the same fashion as Mr. Smith. Mr. Smith rendered aid to a colleague of his who had been assaulted, who was bleeding profusely, who had gone with his colleague by ambulance to a local hospital, stayed with him, and then returned to his motel room or hotel room and provided a written statement. He was focused on the events relating to the well-being of his colleague. He had given a good faith estimate as to the time of the events in question. Mr. Messinger was also asked questions relating to the timing of the events in question. Mr. Messinger claimed that he did not have any memory of any of the circumstances, and would not give an estimate as to when he believed the events took place, and stated that he suffered a head injury. The only head injury that he had was a cut to his head. There was no treatment rendered to him at the hospital for his head injury other than to address the wound and to treat his fractured ankle. There is no evidence that Mr. Messinger was suffering any neurological problems. He wasn't treated for any vision problems. He didn't complain of headaches. He didn't seek any treatment for any issue which could possibly have been related to a memory issue. At the time he was in the hospital, he texted his wife. He had spoken to the hospital personnel. He had spoken to Mr. Smith. One of the major focuses of Mr. Smith's claim is that the agency has applied different evidentiary standards to Mr. Smith as it had applied to Mr. Messinger. Mr. Messinger was not cited for lack of candor. During the investigation that took place when the Federal Air Marshals were told that the incident had occurred at a particular period of time based upon ambulance records and based upon hospital records, Mr. Smith was not informed of that. There would be no plausible… Why do they have to inform him about it? Mr. Smith gave a statement where he in good faith believed that the incident happened. Well, you keep saying it's in good faith, but the testimony from other people and the AJ specifically found that he was lying to cover up the fact that they were drinking in an whether or not he was told the time or whether the others were told the time, the fact is there's a factual finding based upon evidence that he was not telling the truth intentionally. It's not just a negligent oversight on the time. With regard to the drinking issue and the disparity in treatment and the inequality in treatment, Mr. Messinger was not found culpable of… What does the fact that the agency treated this other person who was not the team leader differently? Even if there was disparate treatment, isn't the team leader subject to a higher penalty? A team leader may be subject to a higher penalty, but a… Particularly when he fabricated a story to try to cover it up. A team leader may be entitled to a higher penalty if he fabricated something, but in terms of It seems to me your whole argument here on appeal is they should have also fired this other guy because he did the same kind of impermissible drinking as my client. That is a conclusion that is being made based upon the premise that Mr. Smith was lying. But that's the conclusion that the AJ made based upon specific factual testimony. Without taking into account the fact that Mr. Smith, during the course of the investigation, was not apprised of the records that the investigator had, which showed that the Why would there not be a good faith belief on Mr. Smith's part? Why could he not have been totally focused on rendering aid to a fallen colleague, a traveling… He could have. That's the argument you made to the ALJ, and as a fact finder, the AJ disagreed with you and found the opposite. But we're not here to re-decide the facts. We're here to look at the evidence, and the evidence is even before this interview that you claim he should have been told the data, he helped another subordinate and, according to the subordinate, compelled him into filing a false incident report predating the time period. He continued to lie about it at the interview. He harassed the subordinate. Those are all factual allegations that I know you disagree with, but they're what the AJ found, and they're supported by specific pieces of evidence. How can we just sit here and decide your story is better now on appeal? The factual evidence of record, which the administrative judge did not consider, and which was… Don't talk about what they didn't consider. Talk about the evidence that the AJ relied on and why it's not substantial evidence. In order to reach a substantial evidence finding, one must look at the evidence which is not supportive of the evidence. That which detracts from the whole picture, right? But there's a lot of evidence supporting the AJ's finding. But a significant and material piece of evidence that the administrative judge did not consider was Mr. Altomare's statement that at the time the initial report was drafted, he believed that the time of the event were correct. Then when Mr. Altomare returned to Philadelphia, he had given a statement, an independent statement. The independent statement was consistent with his initial statement, and he stated at the time of the hearing that he believed that when he made the first two statements that the times that he had placed in the statement were accurate. But in between that, he recanted and said Smith forced him into going along with that story, and that's the piece of evidence that AJ relied on. Aren't those two? There's two different stories, and AJ can pick one, can't he? Particularly because he heard Altomare's testimony live, didn't he? No. No? No. The time sequence of events is that on the morning after the incident, there was a joint report sent to management. After Mr. Altomare returned to Philadelphia, he prepared a second report. Both of those reports indicated that the incident happened at approximately 11.30 p.m. When Mr. Altomare was interviewed two months later, he initially told the investigators that the incident happened at 11.30 p.m. After he was shown the ambulance records and the hospital records and was interrogated for four hours, he changed his story. So AJ knows all of this, and he's still choosing the other story over yours? Yes. That was not reflected in the decision that the administrative judge issued. Can I refer you to pages 23 and 24 of the supplemental appendix, specifically talking about the inconsistencies in his testimony and his changing of his story, and it finds that he went along with the fabrication of the story? I'm sorry. Where are we? It's okay. You can move on. Are you well into your rebuttal time, Mr. Friedman? Thank you. If you want to save the rest of it. Yes. We'll hear from the government, Mr. Igarasi. Good morning, and may it please the court. This case is about a federal law enforcement officer who betrayed both the public's and his employer's trust. He did so repeatedly and attempted to cover it up. When the agency discovered his malfeasance, it fired him. It was right to do so. The MSPB sustained three charges against Mr. Smith in this case for lack of candor, interference, and negligence. The MSPB's decision should be affirmed accordingly. What this case is really about is about credibility. Credibility of the petitioner, Thomas Smith. Credibility of his fellow federal air marshals on the mission with him that night. Credibility of the investigating Secret Service agent, as well as other federal air marshals who are uninvolved, but who interacted with the petitioner when he returned to Philadelphia. Most of the petitioner's arguments here are mere disagreements with the administrative judge's witness credibility determinations and conclusions. But those are insufficient bases for this court to overturn the MSPB decision. In fact, as this court has held, and as the court is aware, credibility determinations made by an administrative judge are, quote, Mr. Freedman argues that the administrative judge did not make demeanor-based credibility determinations. But in fact, that's not the case. The MSPB decision at supplemental appendix. It has to be based on demeanor to earn deference, do they? They do not. But in this case particularly, the MSPB held that the administrative judge's judge did not explicitly say that he was based on the witness's demeanor. The MSPB board decided that or held that the judge at least implicitly made demeanor-based credibility determinations. So to the extent that... Who testified live before the AJ? Well, Mr. Altomare, in fact, did testify live. As Your Honor noted, Mr. Altomare had... Was unclear about what time the events the night occurred. But ultimately, when he testified before the minister... And actually, before the administrative judge, he was a little bit unclear about what the times were. And what the administrative judge concluded was that he thought his testimony regarding the timing of the events was more accurate and more reliable only a couple of months after the events versus 20 months after at the time of the hearing. Okay. Essentially, most of the arguments the petitioner makes here are challenges to the witness credibility determinations made by the administrative judge for the lack of candor interfering in the investigation as well as the alcohol violations. Although the petitioner claims that the administrative judge never took into account certain facts or testimony on behalf of the other air marshals, that's not the case. We point that out in our brief where specifically, the administrative judge made credibility determinations. Was Messenger disciplined in any way for this event? He was. He was originally slated to be suspended for 30 days, but that suspension was reduced to 14 days. To the extent that Mr. Smith here argues that he was treated unfairly as compared to his fellow federal air marshals, what happened was that the agency investigated the three air marshals that were on the mission and that went out that night drinking for nearly eight hours. It fired two of them and suspended one of them. With regard to the extent that the petitioner was making an argument that the penalty itself was unjustified, each one of the first two charges leveled against Mr. Smith, lack of candor and interfering with investigations alone justify the penalty of removal according to the TSA's own table of penalties and offenses. For this court to second guess that, the court can only review the penalty determination of the agency if it's totally unwarranted. What happened here was that the deciding official took into account all of the aggravating and mitigating circumstances with regard to Mr. Smith's offenses as well as his past and blemish record. He detailed that extensively in a written form as well as testifying before the administrative judge at the hearing. The administrative judge reviewed that penalty determination to see if it was reasonable or not and concluded that it was. TSA's choice of the recommended penalty based on its own table of offenses for a federal air marshal who repeatedly tried to interfere with an investigation violated a significant safety protocol by drinking well within the bar window before mission time and then attempting to cover up was certainly well within the bounds of reasonableness. Regarding Mr. Smith's allegation of harmful procedural error, the burden is on Mr. Smith to prove that an error occurred and that it was harmful. This is a classic case of where the cover-up was worse than the crime. The agency investigated all of the federal air marshals involved that night and it was Mr. Smith's response to that investigation that caused concern for the agency and caused him so much trouble later on. Mr. Smith never points to any particular investigatory guideline that was violated by the fact that the special agent who was investigating did not disclose to him the fact that the agency had the EMS records and knew exactly what time the event occurred. Because there was no investigatory guideline that was violated, there was no error in that investigation. Moreover, it was Mr. Smith's response to the investigation by trying to cover it up, by trying to intimidate his junior probation at a federal air marshal that he was supervising, as well as his continued intransigence during the investigation that made the agency end up treating him differently and in fact firing him as opposed to firing the air marshal who was injured that night. If the panel doesn't have any questions. I have a comment. It seems to me that the confidentiality markings in your briefs are improper. You mark messenger's name as confidential, the time of the drinking, the name of the cafe where they were. None of this is appropriately labeled confidential and indeed you yourself at oral argument disclosed some of that information. I just don't understand what you're doing. Well your honor, to the extent that I disclosed any of that information during the argument here, it was inadvertent. I'm not sure which one. You mentioned messenger's name. I think I only referred to him as an injured. No, you used his name specifically. I apologize. Certainly, the redactions that I made in my brief were based on redactions that the agency made. Yeah, but you're supposed to re-examine them. Anyway, I don't want to argue about it. I think that it's an example of over marking and you shouldn't be doing it. Hopefully, our new rule will take care of this when it comes out. Understood, your honor. Thank you, counsel. Mr. Messinger received a 14 day suspension based upon missing a return flight. He did not receive a suspension for lack of candor. He didn't receive a suspension for violating TSA's policy on the use of alcohol. He was treated in a disparate fashion. In terms of the harmful procedural H.E.R. portion, there is an Office of Mission Support Regulation 3700, which is cited in the brief. It talks about employees perform duties fair, impartial, and reasonable manner equally to everyone. There was testimony by the supervisory special agent, the one who supervised the special agent who had conducted the investigation, that it was impermissible to target any individual. Mr. Smith was never questioned on any aspects of interfering with an investigation, yet he was charged with that. The proposing of an official in this case relied on the findings of the investigation. When Mr. Smith was never apprised of the charge and given an opportunity to provide a statement. Moreover, there is absolutely no evidence that Mr. Smith told Mr. Altomare what to say. There was never any claim that Mr. Altomare had informed management that there was a threat. Mr. Altomare was a probationary employee. That's why he was terminated. He didn't have the procedural due process protections. There is a distinction between Mr. Altomare and Mr. Smith. There is no distinction between Mr. Smith and Mr. Messinger. Mr. Messinger was not charged with violating the drinking policy. The only basis for Mr. Smith being charged with a violation of the drinking policy was that Mr. Altomare, two months after the events in question and after being questioned or interrogated for four hours, stated that he remembers seeing Mr. Smith holding a bottle of beer at 1 a.m. Mr. Friedman, as you can see, your red light is on. All rise. The honor report is adjourned until tomorrow morning at 10 a.m.